# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| E.I. DU PONT DE NEMOURS AND COMPANY, a Delaware corporation | ) ) ) | |
| Plaintiff, | ) ) | C.A. NO. _____ |
| v. | ) ) ) | |
| CANYON GROUP LLC a Delaware limited liability company, and NISSAN CHEMICAL INDUSTRIES, LTD., a Japanese corporation | ) ) ) ) | **PUBLIC VERSION** |
| Defendants. | ) ) ) ) | |

## COMPLAINT FOR PRELIMINARY INJUNCTIVE RELIEF AND BREACH OF CONTRACT AND TORT CLAIMS

OF COUNSEL:

A. Stephens Clay
Georgia Bar No. 129400
Ronald L. Raider
Georgia Bar No. 592192
KILPATRICK STOCKTON LLP
1100 Peachtree Street, Suite 2800
Atlanta, Georgia 30309-4530

Tonya R. Deem
NC State Bar No. 23075
KILPATRICK STOCKTON LLP
1001 West Fourth Street
Winston-Salem, North Carolina 27101

Dated: April 7, 2005/676979

Richard L. Horwitz, Esquire (#2246)
Arthur L. Dent, Esquire (#2491)
Suzanne M. Hill, Esquire (#4414)
POTTER ANDERSON & CORROON LLP
Hercules Plaza, 1313 N. Market Street
P.O. Box 951
Wilmington, Delaware 19899-0951

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| E.I. DU PONT DE NEMOURS AND COMPANY, a Delaware corporation )<br>)<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>CANYON GROUP LLC a Delaware limited liability company, and NISSAN CHEMICAL INDUSTRIES, LTD., a Japanese corporation )<br>)<br>)<br>)<br>Defendants. )<br>) | C.A. NO. _____<br><br><br>**CONFIDENTIAL -**<br>**FILED UNDER SEAL**<br>**PURSUANT TO L.R. 26.2** |

## COMPLAINT FOR PRELIMINARY INJUNCTIVE RELIEF AND BREACH OF CONTRACT AND TORT CLAIMS

Plaintiff E. I. du Pont de Nemours and Company ("DuPont"), by and through undersigned counsel, on information and belief and based on all of the facts set forth below, alleges as follows:

### I.    NATURE OF THE ACTION

1.    This is an action for preliminary injunctive relief in aid of international arbitration arising out of contractual breaches and tortious conduct by Nissan Chemical Industries, Ltd. ("Nissan") and its alleged "affiliate" Canyon Group LLC ("Canyon Group").

2.    DuPont and Nissan are parties to                                        (the "Agreement") that

# REDACTED

used in                          products.

The term "Territory" is defined in the Agreement

**REDACTED**

3.    In return for its                        rights under the Agreement, DuPont agreed to

**REDACTED**

4.    DuPont has fulfilled its obligations under the                        Agreement.

DuPont has expended considerable financial and human resources

5.                        are regulated in the United States as "pesticides" under the Federal

Insecticide, Fungicide and Rodenticide Act ("FIFRA"), 7 U.S.C. §136 *et seq.*.

**REDACTED**

DuPont also has expended financial and human

resources

6.    DuPont

DuPont initially

**REDACTED**                        recently

obtained a U.S. registration

trademark and trade name                        On information and belief, DuPont states that

has used the                        outside

**REDACTED**

7.    The relationship between Nissan and the Canyon Group is unknown.  Nissan claims that Canyon Group is an Agreement-defined                  but despite DuPont requests for substantiation of this claim, has not provided DuPont with information to verify or clarify Canyon Group's status :          **REDACTED**

8.                  is applied to                  after they have emerged from the soil. The next growing season for applying                  in the United States will occur from approximately                  and this season will be the last growing season for 2005.  On information and belief, Canyon Group is planning

**REDACTED**

during this next growing season.  These activities are intended to and likely will divert                  from DuPont to Canyon Group and Nissan and is designed to erode DuPont's pricing          **REDACTED**          In order for Canyon Group                  for sale during the                  growing season, it must obtain sales, begin formulating and then distribute the products within the

9.    Article 16-2 of the          **REDACTED**          calls for arbitration under the rules of the International Chamber of Commerce ("ICC") to take place in Japan.

10.    DuPont is willing to arbitrate the dispute.  However, the ICC will not be able to appoint an arbitrator and have the matter heard in the next critical 30 to 45 days.  It is during this timeframe, Canyon Group and Nissan, and          partners,          **REDACTED**                  for the          2005 growing season.

11.    Neither the ICC nor a Japanese court is in a position to enjoin conduct in the United States within the necessary timeframe.

12.    Canyon Group is a Delaware limited liability corporation conducting business in the United States, including Delaware.  DuPont does not know if it is subject to the arbitration provision in the                              Canyon Group is piggybacking onto

## REDACTED

in its own name or through contractual partners, agents, and affiliates that give rise either to claims for breaches of contract or tortious interference with contract, or possibly both, as alleged herein.

13.    DuPont requests preliminary injunctive relief enjoining Canyon Group, Nissan and any of their affiliates, agents, assigns or contractual partners such as Gowan Company from

## REDACTED                              in the Territory

until the dispute over the exclusivity expiration date is resolved through arbitration or until                when the                        Agreement expires.  Unless enjoined, Canyon Group and Nissan's breach of the                        Agreement will give them a

## REDACTED            divert DuPont's customers to Nissan and Canyon Group,

cause confusion among customers and distributors, and otherwise irreparably harm DuPont, as set forth herein.

## II.    PARTIES AND JURISDICTION

14.    Plaintiff E.I. du Pont de Nemours and Company is a Delaware corporation with its principal place of business located at 1007 Market Street, Wilmington, Delaware 19898.

15.    Defendant Canyon Group LLC is a Delaware limited liability company with its principal place of business located at 370 South Main Street Yuma, Arizona 85364.

16.    Defendant Nissan Chemicals Ltd. is a Japanese corporation with its principal place of business located at Kowa-Hitotsubashi Building, 7-1, 3-Chome, Kanda-Nishiki-Cho, Chiyoda-Ku, Tokyo, Japan.

17.    This Court has jurisdiction over the parties and claims asserted herein pursuant to 28 U.S.C. § 1331 and the Federal Arbitration Act, 9 U.S.C. § 203.

18.    Venue is proper in this Court under 28 U.S.C. § 1391(a) and 9 U.S.C. § 204.

### III.    STATEMENT OF FACTS COMMON TO ALL CLAIMS

**A.    Overview of the Pesticide Industry**

19.    **REDACTED**    used in the formulation of    products. are regulated in the United States as "pesticides" under FIFRA.    are intended to kill or    the development of    without harming desirable plants, *e.g.,*    **REDACTED**

20.    When used in a formulation with other ingredients, because it is applied after the    has emerged from the soil.  By killing various    protects numerous crops, including

### REDACTED

21.    are regulated products.  No    may be made, promoted for sale or sold in the United States unless it is registered and approved by the EPA under FIFRA.  State agencies also register FIFRA-registered pesticides for use within their respective state.

22.    The FIFRA registration process in the United States, including maintenance of a registration once granted by the EPA, entails much time and cost.  The registrant must submit

significant information and have conducted numerous studies designed to establish the efficacy and effect of the formulated product on targeted          effects on productive crops, effects under the different soil and climatic conditions, residue and environmental fate studies to determine the effects of the          and its breakdown byproducts on human health, animal health and the environment. The FIFRA registration process often requires years before EPA approves the registration application.

23.          do not contain 100 percent of the active ingredient. A **REDACTED** will typically contain an "active" ingredient in combination with other ingredients that dilute the active ingredient or provide carriers or other properties to optimize the          application and end-use on the approved crop. The actual formulation is proprietary and trade secret information. In the United States, in order to receive a FIFRA registration, the actual formulation must be disclosed and remain on file with the EPA as the Confidential Statement of Formula. EPA considers commercial products that deviate from the Confidential Statement of Formula to violate FIFRA.

24. The formulation of **REDACTED** or any pesticide, must conform to the Confidential Formulation Statement, which includes proprietary, confidential commercial, and trade secret information.

25. In the United States, EPA must also approve the FIFRA regulated          label which, among other things, notifies the percentage of the active ingredient in the **REDACTED** formulation, sets forth (a) warnings and safety precautions, (b) use directions (including intended crops, timing and application rates), and (c) other pertinent information, before the          may be registered and sold to the grower-user. EPA has registered and approved the label for the

**REDACTED**          True and correct copies of the          label and

-6-

EPA approval are attached hereto as Exhibits 1 and 2, respectively and by this reference incorporated herein

26.    Nissan and DuPont own patents                     within and outside the Territory.  The United States patent claiming

The Nissan Canadian patent                     **REDACTED**

**B.    The                     Agreement and         Agreements**

27.    In the early 1980s, DuPont and Nissan independently researched

with the expectation that the research would yield a commercially viable

28.    In 1982, DuPont and Nissan entered into the                     Agreement, effective July 30, 1982.  A true and correct copy of the  **REDACTED**  Agreement is attached hereto as Exhibit 3 and by this reference is incorporated herein.

29.    The                     Agreement sets forth the parties obligations and rights

Under the                     Agreement, DuPont agreed

**REDACTED**

30.    Under the                     Agreement Nissan (a) agreed

**REDACTED**

**REDACTED**

31.    Specifically, the                           Agreement provides as follows:


**REDACTED**


A true and correct copy of the October 30, 1989 Amendment to the

Agreeement is attached hereto as Exhibit 4 and by this

reference is incorporated herein.


**REDACTED**

**REDACTED**

32.    DuPont and Nissan entered into a Letter Amendment to the

Agreement to add clarifying language to Article 13, which is a provision of the

**REDACTED**        Agreement entitled "Termination."  The amendment was transmitted

under cover of letter dated December 21, 1983 and became effective on January 30, 1984.  A

DuPont representative executed the Letter Amendment on DuPont's behalf on January 6, 1984, a

Nissan representative, executed the Letter Amendment on Nissan's behalf on January 30, 1984.

A true and correct copy of the December 21, 1983 Letter Amendment is attached hereto as

Exhibit 5 and by this reference is incorporated herein (hereinafter the "Letter Amendment.")

33.    With respect to Article 13, the Letter Agreement

**REDACTED**

(Emphasis original.)

34.    Below is a true and correct redlined version of Article 13 of the

                        Agreement.  Language added by the Letter Amendment is underlined and

language deleted has a strikethrough line:

**REDACTED**

**REDACTED**

35.     Article 13, as amended by the Letter Agreement, is valid and in full force and
effect.

36.     Under Article 7 of the                          Agreement, DuPont and Nissan

**REDACTED**

37.     On March 25, 1985, DuPont and Nissan

**REDACTED**

A true and correct copy of the                                    is attached hereto as Exhibit 6 and
by this reference is incorporated herein.

38.     Article 11 of the                          Agreement is entitled "Period of
Agreement," which provides that

**REDACTED**

39.    In the United States,

**REDACTED**

DuPont and Nissan

(hereinafter the

Agreement"), until                Under the second supply agreement,

**REDACTED**

A true and correct

copy of the              Agreement is attached hereto as Exhibit 7 and by this reference is

incorporated herein.

C.    **DuPont Fulfills Its Obligations**

40.    DuPont has fulfilled its obligations under the                Agreement,

including, but not limited to, undertaking the following activities:

**REDACTED**

c.  DuPont                from Nissan in accordance with the terms and

conditions of the pertinent        agreements.

**REDACTED**

41.    In the United States, DuPont undertook activities

shortly after entering into

the                          Agreement.

42.    In 1983, DuPont              **REDACTED**

DuPont filed a trademark registration for its

trademarks and trade names in              Exhibits 8 and 2 are records from the websites of

the United States Patent and Trademark Office and from the EPA confirming the submission

dates and by this reference are incorporated herein.

43.    After reviewing DuPont's registration application, EPA approved DuPont's

registration for its              on              and approved DuPont's

registration for its      **REDACTED**              · on              Through

DuPont's work              has been approved

for application in over a dozen crops.  DuPont also submitted applications to state agencies.  As a

consequence, quizalofop is a registered herbicide in over 40 states and Puerto Rico.

44.    Pursuant to Article 9 of the              Agreement,

**REDACTED**

D.              is Commercially Successful

45.              a commercially successful              in the Territory.  In the United

States,              DuPont

also has significant sales in              as well as sales throughout

and      **REDACTED**

46.    The commercial success                      direct result of DuPont's

efforts.                                                  **REDACTED**

**E.    Nissan and Canyon Group Breach the**                      **Agreement**

47.    The DuPont-Nissan relationship                      has worked well for the

past twenty years.

48.    In 2004, Nissan unilaterally decided to alter the parties' business relationship

in the United States in derogation of DuPont's

49.    In June 2004, Nissan and Gowan Company LLC, announced the formation of

Canyon Group LLC, effective June 30, 2004.  Their press announcement indicated that the

**REDACTED**

In addition, sales supporting transitional Nissan agreements with various

companies will be channeled through Canyon.  The new company will grow its business through

product acquisitions and label expansions."  A true and correct copy of the Canyon Group

formation press release is attached hereto as Exhibit 9 and by this reference is incorporated

herein.                      **REDACTED**

50.    The                      Agreement has been among the transitional Nissan agreements

that have been channeled through Canyon Group, that is, DuPont

**REDACTED**

under the                      Agreement from

DuPont did not object because the Nissan Chemical

representative in the United States                                      was

**REDACTED**

working for Canyon Group.

51.    Under FIFRA, third party ("me-too") registrants may elect to cite existing data

regarding an already registered active ingredient rather than generating and submitting their own

data (after the ten-year exclusive use period). 7 U.S.C. §136a. No permission is required to cite

to data outside the exclusive use period. *Id.* However, this right does not apply to formula

information contained in the Confidential Statement of Formula, which is not available to the

public or other third party registrants.

52.    Under Articles 9 and 12 of the                    Agreement, DuPont is

obliged in limited circumstances to

                                        The                    Agreement does not

grant to Nissan the right

                                                    Agreement.

**REDACTED**


53.    Nissan and Canyon Group have used and are using Nissan's United States

registration rights and DuPont's data in derogation of DuPont's

                            Agreement.

54.    By letter dated November 4, 2004, Nissan told DuPont as follows:


**REDACTED**                    Nissan then sought DuPont's

consent

                                    A true and correct copy of Nissan's

letter dated November 4, 2004 is attached hereto as Exhibit 10 and by this reference is

incorporated herein. DuPont denied this request.

-14-

55.    By letter dated December 14, 2004, DuPont advised

Agreement remained in full force and effect throughout the

Territory until                                              DuPont advised Canyon

Group that

**REDACTED**

A true and correct copy of DuPont's letter dated December 14,

2004 is attached hereto as Exhibit 11 and by this reference is incorporated herein.

56.    DuPont also told

**REDACTED**

Agreement.  Nissan has

never furnished such verification to DuPont.

57.    Nissan, not Canyon Group, responded in an electronic mail correspondence

stating that

**REDACTED**

A true and correct copy of Nissan's electronic mail response is attached

hereto as Exhibit 12 and by this reference is incorporated herein.

58.

**REDACTED**

is

attached hereto as Exhibit 13 and by this reference is incorporated herein.  On information and

belief, the Gowan Company

**REDACTED**

59.    On information and belief, Nissan and Canyon Group have shared DuPont's confidential information with a third party to enable the

in derogation of DuPont's        rights under Article 6-1 of the

**REDACTED**        Agreement.  This conduct breaches Article 4-2 and 6-1 of the

Agreement.

60.    The parties continued to try to resolve their differences and had a meeting as recently as March 4, 2005.  These efforts have failed.  A true and correct copy of correspondence regarding the March 4, 2005 meeting is attached hereto as Exhibit 14 and by this reference is incorporated herein.

61.    On information and belief, Canyon Group        are surveying distributors and seeking to divert DuPont's        **REDACTED** For example, on information and belief, distributors of crop protection products have been told that DuPont will stop distributing        after December 2006 and that they should        products now.

62.    Canyon Group        have advertised        in crop protection trade magazines.  For example, the March 2005 issue of        included an advertisement        **REDACTED**        A true and correct copy of the Targa® advertisement in <u>Sugar Beet Grower</u> is attached hereto as Exhibit 15 and by this reference is incorporated herein.        is registered for use in Delaware. On information and belief, Canyon has or will register        in each state that DuPont has registered        including Delaware. .

-16-

63.    On information and belief, Canyon Group                    are using

Nissan's registration and essentially have copied DuPont's label in material respects in offering

for sale in the United States                    trade name.  A true and correct

copy of the                    product label is attached hereto as Exhibit 16 and by this reference is

incorporated herein.

**REDACTED**

64.    By advertising, distributing and selling                    Canyon

Group and Nissan, whether themselves or through their contractual partner                    are

diverting, have diverted and will continue to divert DuPont                    to themselves,

unless enjoined.  DuPont will lose these customers.

65.    By prematurely entering            **REDACTED**

Canyon Group and Nissan will erode the pricing structure DuPont has created for

in order to recoup a fair return on its investment.

IV.    **CAUSES OF ACTION**

**FIRST CAUSE OF ACTION**
**(Injunction in Aid of Arbitration)**

66.    DuPont restates and incorporates by reference the foregoing allegations as if fully

set forth herein.

67.    The                    Agreement is a valid contract between DuPont and

Nissan granting DuPont

**REDACTED**

68.    Nissan has assigned responsibilities                    DuPont under the

Agreement to Canyon Group.

69.    DuPont has a substantial interest in protecting its contractual right to the

provisions in the                    Agreement, which includes

-17-

70.    Section 16-2 of the                    Agreement states "arbitration shall be held in Japan" for "any dispute arising out of or in connection with this Agreement . . ." and pursuant to the rules of the ICC.

71.    A dispute currently exists whether Nissan and Canyon Group have breached the provisions of the                    Agreement by

**REDACTED**

in the United States.  This dispute ultimately is subject to arbitration.

72.    Neither party has initiated arbitration proceedings.  The ICC will not be able to select an arbitrator and have the dispute heard and resolved before Nissan and Canyon Group

**REDACTED**                    in the next growing season and thereby irreparably damaging DuPont.                    will be applied during the growing season.  In the next                    Nissan and Canyon Group will need to                    After this period, the product will be available during the growing season.  Once the growing season ends, there is no demand

73.    The ICC Rules only grant authority to the arbitral tribunal to award interim injunctive relief.  Before an arbitral tribunal is appointed, ICC Rules do not have a mechanism for issuing interim injunctive relief.

74.    The ICC process for appointing an arbitral tribunal will not grant DuPont relief for this growing season.  The process can take weeks, if not longer, and requires both contractual parties to cooperate in order to expedite proceedings.

75.    The                    Agreement does not prevent DuPont from seeking preliminary injunctive relief from this Court or require that the matter be heard elsewhere.  This

Court is better positioned to provide preliminary injunctive relief because the conduct sought to be enjoined is occurring only in the United States.

76.    An injunction preventing Nissan and Canyon Group from

**REDACTED**

or contracting with a third party, including

until an ICC-appointed arbitrator has issued a decision relative to whether the                    provisions remain in full force and effect will aid arbitration and further the parties' intent for a neutral arbitrator to decide the contractual dispute.  Without an injunction, any dispute presented to an ICC-appointed arbitrator will become moot because Nissan and Canyon Group

**REDACTED**

and encroached on DuPont's

77.    Allowing Canyon Group and Nissan to breach the                    provisions in the                    Agreement by allowing Canyon Group and

is causing and will cause DuPont irreparable harm.  A breach of the                    provisions will (a) cause DuPont to lose customers to Canyon Group, (b)                    (c) deprive DuPont a fair return

**REDACTED**

(d) disrupt and confuse DuPont's distribution network and customers,

(e) deprive DuPont of its contractually bargained-for

78.    Allowing Canyon Group and Nissan

before the                    Agreement expires will harm DuPont's legitimate business interests and expectations.  DuPont has expended considerable financial and human resources to (a)                    in the

-19-

**REDACTED**

. and (b) obtain EPA and other regulatory agencies

registration and approval and to create commercial demand for                                    **REDACTED**

DuPont undertook these efforts secure in the knowledge Nissan, either directly or through

affiliates and third parties, would not compete with DuPont in the markets it assiduously had

developed until the                                    Agreement expired.

79.    The balance of hardship favors DuPont.  An injunction would maintain the status

quo until such time as an arbitral tribunal resolves the parties' contractual dispute.


## SECOND CAUSE OF ACTION
### (Tortious Interference With Contract)

80.    DuPont restates and incorporates by reference the foregoing allegations as if fully

set forth herein.

81.    DuPont does not know the relationship between Nissan and Canyon Group.

DuPont is not certain Canyon Group will consent to arbitration under the Development/License

Agreement, or whether it is an "Affiliate" that is subject to and bound by the terms and

conditions of the                                    Agreement including the arbitration provision.

82.    On information and belief, Canyon Group is a Delaware LLC conducting business

in the United States.  Canyon Group either is subject to the terms of the arbitration or is

tortiously interfering with DuPont's contractual relationship with Nissan.

83.    Canyon Group knows or should know of the                                    Agreement.

Former Nissan employees are working for Canyon Group and are aware of the

Agreement, including DuPont's                                    rights.

84.    On information and belief, Canyon Group                                    · manufactured

by Nissan into the United States and is                          **REDACTED**

**REDACTED**

which it is distributing for sale

trademark.

85.     Canyon Group is trying to divert DuPont customers

86.     This conduct tortiously interferes with the DuPont-Nissan

Agreements.

### THIRD CAUSE OF ACTION
**(Breach of Contract)**

87.     DuPont restates and incorporates by reference the foregoing allegations as if fully

set forth herein.

88.     DuPont and Nissan agreed that the                              Agreement would

continue in full force and effect in each country in the Territory

**REDACTED**

89.                                                              the

Agreement continues in full force and effect throughout the Territory,

90.     The exclusivity provisions in Article 6-1 of the                   Agreement

remain in effect until                              Article 6-1 grants DuPont the

right        **REDACTED**

91.     Canyon Group and Nissan have breached the                       Agreement

or by contracting with a third party,              to conduct these activities in the

United States.

92.    DuPont is entitled to injunctive relief to enjoin a breach of                **REDACTED**

provision.  DuPont would ask this Court to resolve any contract issue the parties do not submit to

arbitration.

### FOURTH CAUSE OF ACTION
#### (Misappropriation of Confidential Information)

93.    The formulation of a FIFRA-registered                must conform to a Confidential

Statement of Formula on file with the U.S. EPA.

94.    The Confidential Formulation Statement is not available to the public and

includes proprietary, confidential and trade secret information.

95.    Under Articles 9 and 12, Nissan has agreed

**REDACTED**

96.    On information and belief, Nissan and the Canyon Group have shared DuPont's

confidential information with                                        in breach of the

Agreement, and under United States and Japanese laws protecting

confidential information and trade secrets.

97.    Nissan, Canyon Group and their contractual partners and agents will gain an

unfair advantage if allowed to use DuPont's confidential information and trade secrets to

compete against DuPont.  The misappropriation of DuPont's confidential information and trade

secrets is causing and will continue to cause DuPont irreparable harm unless and until enjoined.

WHEREFORE, plaintiffs demand judgment as follows:

A.    Preliminarily enjoin Nissan and Canyon Group, including all other affiliates,

agents, contractual partners such as                or assigns,

**REDACTED**                                        an arbitral

tribunal hears the evidence and argument from the parties and issues a final decision on the merits' and

      B.      Declare that the exclusivity provisions are still in force and effect in the United States;

      C.      Award such other and further relief as the Court may deem just.

DATED:  April 7, 2005

POTTER ANDERSON & CORROON LLP

Richard L. Horwitz (#2246)
Arthur L. Dent (#2491)
Suzanne M. Hill (#4414)
Hercules Plaza, 6th Floor
1313 N. Market Street
P.O. Box 951
Wilmington, Delaware 19899-0951
Telephone: (302) 984-6000
rhorwitz@potteranderson.com
adent@potteranderson.com
shill@potteranderson.com

OF COUNSEL:

A. Stephens Clay
Georgia Bar No. 129400
Ronald L. Raider
Georgia Bar No. 592192
KILPATRICK STOCKTON LLP
1100 Peachtree Street, Suite 2800
Atlanta, Georgia 30309-4530
Telephone: (404) 815-6500
Telecopy:  (404) 815-6555

# EXHIBITS
# 1 THRU 16

# REDACTED

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

### CERTIFICATE OF SERVICE

I, Richard L. Horwitz, hereby certify that on April 14, 2005, the attached

document was served via hand delivery and electronically filed with the Clerk of the

Court using CM/ECF which will send notification of such filing(s) to the following and

the document is available for viewing and downloading from CM/ECF:

Frederick L. Cottrell, III
Richards, Layton & Finger
One Rodney Square
P.O. Box 551
Wilmington, DE  19899-0551


I hereby certify that on April 14, 2005, I have emailed the documents to the

following non-registered participant at the following address:

Larry  Miller
Canyon Group, LLC
370 S. Main Street
Yuma, AZ  85364


By: _____
Richard L. Horwitz
Suzanne M. Hill
Hercules Plaza, 6th Floor
1313 N. Market Street
Wilmington, Delaware  19899-0951
(302) 984-6000
rhorwitz@potteranderson.com
shill@potteranderson.com


677459