IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| E.I. DU PONT DE NEMOURS AND COMPANY, a Delaware corporation,<br><br>Plaintiff,<br><br>v.<br><br>CANYON GROUP LLC, a Delaware limited liability company, and NISSAN CHEMICAL INDUSTRIES, LTD., a Japanese corporation,<br><br>Defendants. | C.A. NO. _____ 200<br><br>PUBLIC VERSION |

**[PROPOSED] ORDER GRANTING MOTION OF PLAINTIFF
FOR PRELIMINARY INJUNCTION IN AID OF ARBITRATION**

OF COUNSEL:

A. Stephens Clay
Georgia Bar No. 129400
Ronald L. Raider
Georgia Bar No. 592192
KILPATRICK STOCKTON LLP
1100 Peachtree Street, Suite 2800
Atlanta, Georgia 30309-4530

Tonya R. Deem
NC State Bar No. 23075
KILPATRICK STOCKTON LLP
1001 West Fourth Street
Winston-Salem, North Carolina 27101

Dated: April 7, 2005/676979

Richard L. Horwitz, Esquire (#2246)
Arthur L. Dent, Esquire (#2491)
Suzanne M. Hill, Esquire (#4414)
POTTER ANDERSON & CORROON LLP
Hercules Plaza, 1313 N. Market Street
P.O. Box 951
Wilmington, Delaware 19899-0951

PUBLIC VERSION
FILED: APRIL 14, 2005

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| E.I. DU PONT DE NEMOURS AND COMPANY, a Delaware corporation,<br><br>Plaintiff,<br><br>v.<br><br>CANYON GROUP LLC, a Delaware limited liability company, and NISSAN CHEMICAL INDUSTRIES, LTD., a Japanese corporation,<br><br>Defendants. | C.A. NO. _____<br><br><br><br><br><br>**CONFIDENTIAL –<br>FILED UNDER SEAL<br>PURSUANT TO L.R. 26.2** |

### [PROPOSED] ORDER GRANTING MOTION OF PLAINTIFF FOR PRELIMINARY INJUNCTION IN AID OF ARBITRATION

This matter having come before the Court for consideration pursuant to motion of Plaintiff E.I. du Pont de Nemours and Company ("DuPont") for preliminary injunction pursuant to Rule 65 of the Federal Rules of Civil Procedure, and the Court having considered the Complaint, declaration of Thomas J. Harkin, exhibits, argument of the counsel and other materials on file makes the following Findings of Fact and Conclusions of Law:

### FINDINGS OF FACT

1. In 1982, DuPont and Nissan entered into a

**REDACTED**

When used in formulation with other ingredients,

applied after the           has emerged from the soil, kills       , and protects numerous crops, such as

2. Among its key features,

**REDACTED**

3.           are regulated products in the United States. The United States Environmental Protection Agency ("EPA") oversees the regulation of pesticides under the Federal Insecticide, Rodenticide and Fungicide Act ("FIFRA"). No        may be sold lawfully in the United States unless and until the EPA has approved its registration application. Moreover, state regulatory agencies must approve a registration application before           can be sold in that state. Many countries regulate pesticides and have programs similar to the FIFRA registration process.

4. Typically, the FIFRA registration process requires several years and considerable expense before a registration application is approved. A registrant must submit numerous health and environmental toxicity studies, and also conduct efficacy studies. Additionally, EPA must approve the Confidential Formulation Statement, which in effect is the recipe for combining the active ingredient,        **REDACTED** other ingredients to facilitate the        efficacy of the product. Each Confidential Formulation Statement contains proprietary and trade secret information.

The Confidential Formulation Statement is not released to the public. Moreover, EPA and state regulatory agencies must approve the label for each commercial herbicide product.

5. DuPont required a significant benefit to compensate it for the significant risks and investment in financial and human resources in obtaining regulatory approval

**REDACTED**

6. Article 13 of       sets forth the term of the agreement. Article 13 provides:

7.

**REDACTED**

8. Nissan insists that Article 13 should be interpreted to mean that

**REDACTED**

9.

10.

**REDACTED**

11.     Nissan does not assert that DuPont has failed to fulfill its obligations

under          **REDACTED**

12.     DuPont filed registration applications and studies with the EPA and filed registration applications throughout the Territory and prosecuted those applications. DuPont obtained an EPA registration for

                                                                    As a result of
DuPont's efforts,        **REDACTED**        in the United States, more than
40 states, and for use on over 20 crops.

13.                             **REDACTED**

in the United States and the Territory, DuPont has expended considerable financial and human resources.

14. Sales from            generate annual revenues of approximately

15. In June 2004, Nissan announced that it formed Canyon Group, in partnership with           Nissan's press announcement indicated that

**REDACTED**

In addition, sales supporting transitional Nissan agreements with various companies will be channeled through Canyon. The new company will grow its business through product acquisitions and label expansions."

16. The    agreement between Nissan and DuPont was among the contracts channeled to Canyon Group.

17. In November 2004, Nissan notified DuPont as follows:

18.        **REDACTED**             authorized to conduct business in DuPont's        Nissan and Canyon Group have enlisted support from a third party,

**REDACTED**

19. Nissan sought DuPont's consent to allow Nissan to furnish DuPont's confidential information to Canyon Group to facilitate Canyon Group's formulation **REDACTED**    DuPont refused to release its confidential information.

20. In late December 2004,            issued a press release announcing it would offer

**REDACTED**

sometime in the spring 2005.

21. In the past several weeks, Nissan and Canyon Group

in the United States.

22. Nissan and Canyon Group have begun soliciting distributors, encouraging them

**REDACTED**

23.          has begun advertising          in the United States.

24. DuPont, Nissan and Canyon Group have tried to resolve their differences regarding the status of DuPont's       rights under       The parties have been unsuccessful.

25. Due to the extensive work required to obtain regulatory approval of new pesticide products, DuPont believes that the only way Defendants would be in a position to have       ready for distribution this spring is if Nissan, without DuPont's consent, furnished DuPont's confidential information to Canyon Group to use in formulating

**REDACTED**

26. DuPont and Nissan have agreed to arbitrate "any dispute arising out of or in connection with"       in Japan in a proceeding to be overseen by the International Chamber of Commerce ("ICC").

27. DuPont is prepared to arbitrate the current dispute.

28. Agricultural application          in the United States during          and then not again until 2006. To meet that application

schedule, any company marketing the product must

**REDACTED**

29. The ICC can only provide interim injunctive relief through an appointed arbitral panel. Such appointments and ICC confirmations have the practical effect that the ICC will be unable to appoint a panel and have the matter briefed and considered before the dates by which quizalofop must be sold.

30. DuPont requests that this Court issue a preliminary injunction in aid of the parties' arbitration agreement. DuPont requests an injunction to preserve the status quo—DuPont's                    rights—until a duly constituted arbitral panel rules on the issues presented.

31. Unless enjoined, Nissan and Canyon Group

**REDACTED**                                        Such actions
will cause DuPont to lose goodwill, lose customers and suffer pricing erosion.

## CONCLUSIONS OF LAW

1. The Court has jurisdiction of the parties and of the subject matter.

2. Plaintiff has shown a reasonable probability of likelihood of success on the merits of its claims for breach of            tortuous interference with the and misappropriation of confidential information. Specifically, Plaintiff has shown a reasonable probability of successfully proving at arbitration that DuPont's rights under         remain in full force and effect

**REDACTED**

3.  The balance of hardships tips decidedly in favor of Plaintiff, which is sustaining ongoing and irreparable harm due to Defendants' efforts

**REDACTED**

4.  The entry of a preliminary injunction to preserve the status quo until a duly constituted arbitration panel rules on the claims alleged is not adverse to the public interest. The public interest will be served by an injunction tailored to avoid confusion in the marketplace between the products of Plaintiffs and those of Defendants. The public interest also will be served by preventing Defendants from interfering with DuPont's legally protected contractual rights and by deterring similar interference in the future.

IT IS HEREBY ORDERED AND ADJUDGED as follows:

1.  Nissan, Canyon Group, and their affiliates and contractual partners, are HEREBY ENJOINED AND RESTRAINED from

**REDACTED**

until the ICC Tribunal has issued a decision relative to whether provisions in _____ entered into between DuPont and Nissan remain in full force and effect.

2.  Plaintiffs must post a preliminary injunction bond in the amount of $_____ within _____ days of the date the Court enters this Preliminary Injunction. A corporate bond shall satisfy the requirements of this paragraph.

3.  This injunction is effective commencing at 5:00 p.m. on the _____ day of _____, 2005, and will remain in effect until further Order of this Court.

IT IS SO ORDERED AND DECREED, this the ___ day of _____ 2005.

_____
U.S. District Court Judge

676943

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

## CERTIFICATE OF SERVICE

I, Richard L. Horwitz, hereby certify that on April 14, 2005, the attached document was served via hand delivery and electronically filed with the Clerk of the Court using CM/ECF which will send notification of such filing(s) to the following and the document is available for viewing and downloading from CM/ECF:

Frederick L. Cottrell, III
Richards, Layton & Finger
One Rodney Square
P.O. Box 551
Wilmington, DE  19899-0551

I hereby certify that on April 14, 2005, I have emailed the documents to the following non-registered participant at the following address:

Larry Miller
Canyon Group, LLC
370 S. Main Street
Yuma, AZ  85364

By: /s/ Richard L. Horwitz
Richard L. Horwitz
Suzanne M. Hill
Hercules Plaza, 6th Floor
1313 N. Market Street
Wilmington, Delaware  19899-0951
(302) 984-6000
rhorwitz@potteranderson.com
shill@potteranderson.com

677459